UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRI-UNION FROZEN PRODUCTS, INC.,
formerly known as EMPRESS
INTERNATIONAL, LTD. and doing business
as EMPRESS INTERNATIONAL,

                Plaintiff,

- against -

INGENIERIA ALIMENTARIA del
MATATIPAC, S.A. de C.V., MARCO
ANTONIO RINCON VALDES and MARCO
ANTONIO RINCON ROMO

                Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 13-1974 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

On December 8, 2015, the Clerk of the Court issued a Certificate of Default, noting the default of all defendants in answering or otherwise moving with respect to the Complaint. *See* DE 29. Subsequently, counsel for plaintiff Tri--Union Frozen Products, Inc., formerly known as Empress International, Ltd. and doing business as Empress International ("Plaintiff" or "Tri-Union"), filed its motion for entry of default judgment, pursuant to Rule 55(b), against individual defendants Marco Antonio Rincón Valdés and Marco Antonio Rincón Romo for their failure to plead or otherwise defend themselves in this action. *See* DE 32, 33.

District Judge Denis R. Hurley referred the motion to this Court for a Report and Recommendation as to whether Tri-Union has "demonstrated that the allegations in the Complaint establish the defendants' liability such that the motion for default judgment should be granted, and, if so, to determine the appropriate amount of damages, costs, and/or fees, if any, to

1

be awarded." Electronic Order of June 6, 2016. For the reasons set forth below, the Court respectfully recommends to Judge Hurley that the motion be DENIED, without prejudice, and with the right to renew once Tri-Union has complied with the directives contained in this Report and Recommendation.

## II.   BACKGROUND

On April 8, 2013, plaintiff Tri-Union, filed a breach of contract action against Ingeniería Alimentaria del Matatipac, S.A. de C.V. ("Matatipac"), Marco Antonio Rincón Valdés, personally and individually, and Marco Antonio Ricon Romo, personally and individually (collectively, "Defendants"). *See generally* Complaint [DE 1]. According to the Complaint, Plaintiff is an importer and worldwide distributor of frozen seafood. *Id*. at ¶ 7. Defendant Matatipac is a packer and supplier of frozen seafood. *Id*. at ¶ 8. Plaintiff alleges that on or about August 22, 2007, all named parties to this action entered into a "Supply, Advance and Loan Agreement" ("the Agreement"). *Id*. at ¶ 10. The Agreement provided that Plaintiff would wire $389,067 (U.S.) to Matatipac "as an advance and loan with respect to Matatipac's supply obligations set forth in the Agreement." *Id*. at ¶ 11. The individual Defendants personally guaranteed repayment of the "advance and loan" to Plaintiff. *Id*. at ¶ 12.

On September 24, 2007, Plaintiff wired Matatipac $389,067 (USD). *Id*. at ¶ 13. Matatipac subsequently made repayment to Plaintiff in the amount of $20,776, and made shipments of product to Plaintiff of $31,077, reducing the principal loan balance to $337,214. *See id*. at ¶¶ 16-17. According to the Complaint, Tri-Union incurred $12,000 in "ocean freight and packaging expenses" on behalf of Matatipac, an amount that it added to the loan balance, for a total of $349,214. *See id*. at ¶ 18.

2

Plaintiff alleges that on or around December 2008, defendant Matatipac ceased its business operations and since then has failed to satisfy its obligations under the Agreement. *Id*. at ¶ 19. Pursuant to the Agreement, "[i]n the event Supplier fails to ship to Empress its normal or customary amount on a weekly or monthly basis as determined by Empress, Empress may upon demand require immediate full repayment of any moneys due Empress." *Id*. at ¶ 20. The Agreement further provides that Plaintiff is entitled to collection costs, including attorney's fees. *Id*. at ¶ 24. On prior occasions, Plaintiff states that it notified Defendants of their default and demanded that Defendants repay Plaintiff the outstanding balance of $349,213, plus interest. *Id*. at ¶ 22. According to Plaintiff, Defendants have been unresponsive. *Id*.

As a result of Defendant's breach of contract and failure to cure the same, Plaintiff argues that it is "entitled to a monetary judgment against defendants in the sum of $349,213 plus interest thereon calculated in accordance with the Agreement at U.S. prime rate plus 1% since December 31, 2008 through February 1, 2013 totaling $61,551 plus reasonable attorney fees in the sum of $36,000, plus court costs, disbursements and continuing interest." *Id*. at ¶ 25.

Defendants are citizens and residents of Mexico. Consequently, Plaintiff has faced challenges in properly effectuating service of process on the Defendants. It took Plaintiff just over two years, with the assistance of private investigators and counsel in Mexico, to locate Defendants and to serve them in a manner that complied with both Fed. R. Civ. P. 4(f) and international law. *See* DE 24, DE 26. According to the certificate of service filed by Plaintiff's counsel on April 17, 2015, Defendant Marco Antonio Rincón Valdés was served with process on March 9, 2015. DE 24. On July 30, 2015, Plaintiff filed a certificate of service indicating that Marco Antonio Rincón Romo was served on May 11, 2015. DE 26.

Once the time for Defendants to respond to the Complaint had expired, Plaintiff the him and him filed Request for a Certificate of Default as to the individual Defendants. DE 28. The following day, December 8, 2016, the Clerk of the Court entered the Certificate of Default. DE 29.

Plaintiff filed the instant Motion for Default Judgment on May 23, 2016 ("the Motion") *See* DE 32, 33. In the Motion, Plaintiff argues that Defendants' failure to Answer or otherwise respond to the Complaint entitles Plaintiff (1) to a sum certain monetary judgment of the principal loan balance of $349, 214, (2) the "plus interest in accordance with the Loan Agreement at U.S. prime rate plus 1% (but reduced herein and calculated at 12% per annum from since December 31, 2008 through May 31, 2016, being 7 years, 5 months, totaling $310,795," and (3) $36,000 in attorney's fees, costs and disbursements. DE 23, ¶ 12. Based on these figures, Plaintiff has requested that the Court enter a default judgment against Defendants in the amount of $696,000 plus court costs and disbursements. *Id*.

In support of the Motion, Plaintiff submitted a copy of the Agreement [DE 33] as well as a "Statement" dated 12/31/2008 listing a series of transactions that it entered into with Defendants. DE 33-1. The Court initially reviewed Plaintiff's submissions and ultimately determined that the papers did not provide the necessary substantiation for the damages requested in the Motion. The Court then issued an Order [DE 34] explaining to Plaintiff that although the Court must accept Plaintiff's allegations as true in regard to liability, *see Onewest Bank, N.A. v. Cole*, No. 14-3078, 2015 WL 4429014, *2 (E.D.N.Y. July 17, 2015) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992)), Plaintiff must still prove that it is entitled to the damages that it has requested. *Onewest Bank, N.A.*, 2015 WL 4429014 at 82. Pursuant to Federal Rule of Civil Procedure 55, the Court "may

4

on hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages . . . ." FED. R. CIV. P. 55(b)(2). Although a formal hearing may not be necessary, the Court must ensure that there is "a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. M/V Hyundai Emperor*, 109 F.3d 105, 111 (2d Cir. 1997) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Without a sufficient basis to establish that the damages sought here are warranted, the Court issued a list of specific documents and information that are needed to lend adequate support to Plaintiff's request. DE 34 at 2-3. Plaintiff was directed to file the requested information no later than January 4, 2017. *Id*. at 3.

On December 13, 2016, Plaintiff's counsel filed an application seeking an extension of the time to provide the requested information to February 6, 2017. DE 37. The Court denied Plaintiff's request on the grounds that no good cause for the extension had been established. *See* Electronic Order dated December 14, 2017. Five days later, Plaintiff's counsel filed a second request for an extension of time to respond, seeking to address the "good cause" element lacking in the original motion. *See* DE 36. This time, Plaintiff's counsel cited as good cause: (1) the age of the requested documents; (2) Plaintiff's being acquired by a different company; (3) Plaintiff's having spent "thousands of dollars on private investigators in Mexico trying to locate the individual Defendants; (4) trying to comply with the Hague Convention; (5) having to re-send documents to Mexico on duplicate occasions because the Mexican government lost the papers; and (6) the intervening holidays. *Id*. Before the Court responded, however, Plaintiff filed another submission on January 4, 2017, the deadline previously assigned. DE 37.

For the reasons discussed below, the Court has determined that Plaintiff's supplemental submission does not adequately substantiate the damages requested. The Court therefore

respectfully recommends to Judge Hurley that Plaintiff's Motion for Default Judgment be denied, without prejudice for the moment, and with the right to renew once Plaintiff has complied with the directives set forth below.

### III.  OUTSTANDING DEFICIENCIES

In calculating the amount of the loan owed to Tri-Union, Plaintiff utilizes a different interest rate in the Motion than it does in its supplemental response.  To illustrate, Plaintiff's counsel states that according to the Agreement "'[t]he loan shall bear and accrue interest at the rate of U.S. prime rate plus 1%'.  This permitted rate at all times exceeded the 12% per annum used to calculate the Judgment requested herein."  DE 32, ¶ 10.  Similarly, a few paragraphs later, counsel states that Tri-Union is entitled to recover from Defendants the principal balance of $349,214 "plus interest in accordance with the Loan Agreement at U.S. prime rate plus 1% (but reduced herein and calculated at 12% per annum from since [sic] December 31, 2008 through May 31, 2016, being 7 years, 5 months, totaling $310,795." *Id*., ¶ 12.  According to the above representations, Plaintiff's counsel calculated the interest accrued using a "reduced" interest rate of 12% per annum.  Based on the application of that rate, Tri-Union argues that Defendants owe it $310,795 in interest alone from December 2008 to May 2016. According to Plaintiff's Supplemental Response, however, as of January 4, 2017, Defendants owed Plaintiff $149,694 in interest, which was calculated using the "U.S. prime plus 1%" provided for in the Agreement. DE 37, ¶ 6; *see* DE 37-6.

As a preliminary matter, Plaintiff's counsel fails to discuss how Tri-Union arrived at the 12% per annum utilized in the Motion, or to provide any authority for its application.  Moreover, Plaintiff maintains that 12% per annum is a "reduced" rate relative to the U.S. prime rate plus 1% provided for in the Agreement.  DE 32, ¶¶ 10, 12.  Based on Plaintiff's own "interest

6

calculation spreadsheet" [DE 37-6, at 2] the Court is at a loss to understand how this can be the case. According to the spreadsheet, for the five of the six years shown (2008-2013), the U.S. prime rate plus 1% was the same.[1] DE 37-6, at 2-3. As these rates never exceeded 12% per annum, the Court is hard-pressed to determine how a rate of 12% per annum can be considered a "reduced" rate. The Court therefore needs further explanation of Plaintiff's rationale. If Plaintiff re-files its motion for default judgment, it must clearly articulate the interest rate it is utilizing and, if the interest rate is something other than that which is provided for in the Agreement, U.S. prime rate plus 1%, then Plaintiff must also explain how it arrived at that rate and why it is entitled to utilize it.

Further, Paragraph 10 of the Agreement provides that "[r]epayment of the loan shall be made in accordance herewith or the subject Promissory Note." DE 33, ¶ 10. The Promissory Note is also referenced in paragraph 11, which states that the note is in the sum of $389,067 and is to be executed by Matatipac with the personal guarantee of Marco Antonio Rincón Valdés. ,*Id.*, ¶ 11.A. Presuming the referenced promissory note contains information essential to an accurate calculation of damages, the Court requested that Plaintiff provide a copy. DE 34. In response, Plaintiff submitted a document entitled "La Protocolizacion del Convenio de Prestamo, Provision y Anticipo de Fecha 22 de Agosto Del 2007, De La Empresa Denominada 'Ingenieria Alimentaria Del Matatipac.' Sociedad Anonima de Capital Variable." DE 37-2. The Court cannot discern the contents of the document since it is written entirely in Spanish and the Court is not in a position to translate it. Plaintiff is to provide an English-language version. If Plaintiff

---

[1] The Prime Rate Chart provided by Plaintiff's counsel from 2017 MoneyCafe.com shows the following: on December 31, 2008, the prime rate was 4.00%; for calendar year 2009, the rate remained stable at 3.25% for the that year as well as calendar years 2010, 2011, 2012 and 2013.

is of the belief that the promissory note is not a necessary component of its damages calculation, then Plaintiff must provide an explanation why that is the case.

In its Motion, Plaintiff represents that Defendants made $51,853 in loan repayments, reducing the total loan balance to $337,214. *See* DE 32, ¶ 9(e). Plaintiff further asserts that it incurred $12,000 in shipping expenses on behalf of the Defendants, a sum which it added to the loan balance. DE 32, ¶ 9(f). The Court directed Plaintiff to provide underlying documentation showing the repayments and shipping expenses since such evidence was absent from Plaintiff's motion papers. DE 34 at 2. In its supplemental response, Plaintiff's counsel informed the Court that he is unable to locate any such documentation, but can provide a copy of two separate summaries that were drafted during Plaintiff's regular course of business and which account for the relevant repayments and expenses. *See* DE 37, ¶ 5. The Court has reviewed these summaries and is reluctant to recommend payment of the $12,000 in shipping expenses based solely on them. The Court therefore directs counsel to conduct a thorough search for the underlying documentation and/or ascertain the prospect of obtaining duplicate copies from the shipping company or some other entity which may have such records. These materials should be included in any future submission

In its supplemental submission, Plaintiff's counsel requests that the damages award include $11,845 in costs that were purportedly incurred in connection with locating the individual Defendants and serving them with process in Mexico. DE 37, ¶ 5. These specific costs were not included in Plaintiff's original motion. Although the Court would consider reviewing these materials, the information provided does not adequately substantiate the costs requested. *See PMB Technical Services, LLC v. Mazoureix*, No. 14-4834, 2015 WL 5664813, at *4 (E.D.N.Y. June 22, 2015), report and recommendation adopted by, 2015 WL 5664823

8

(E.D.N.Y. Sept. 23, 2015); *see also Douyon v. N.Y. Med Health Care, P.C.,* 49 F.Supp.3d 328, 352 (E.D.N.Y. 2014); *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 379 (S.D.N.Y. 2010) (citing *Lide v. Abbott House*, No. 05-3790, 2008 WL 495304, at *2 (S.D.N.Y. Feb. 25, 2008)) ("Where an attorney fails to provide suitable <u>documentation</u> to substantiate the costs incurred, a court may decline to award any costs").

Counsel maintains that his client incurred a $5,000 expense to retain counsel in Mexico. DE 37, ¶ 8. In support of this expense, Plaintiff provided a copy of the retainer agreement with Attorney Garcia Angeles Abogados. *See* DE 37-7 at 1-3. According to the agreement, Mr. Abogados was retained to effectuate service, "make all legal arrangements or order for your debtors to be called before Mexican Justice . . . induce and conduct any possible negotiations, in the event homologate, enforce and collect any final ruling issued in US soil." *See id*. at 1. The retainer obligates the client to pay $5,000 "upon the signature of [this] agreement." *Id*. The retainer was signed by Bryan Rosenberg, identified only as "President & CEO," presumably of Tri-Union Empress International. *Id*. at 3. Plaintiff has not submitted showing that it paid the $5,000 retainer .

As further proof of the $11,845 in costs incurred, Plaintiff provided a copy of a Bank of America Merrill Lynch international money transfer dated February 14, 2014. *See* DE 37-7 at 4. The face of the document shows that $2,000 (USD) was wired to Jose Arturo Ruiz Perez in Mexico by Chicken of the Sea Frozen Food. *Id*. Plaintiff explains in his supplemental submission that Mr. Perez is the first private investigator whom Plaintiff retained to locate Defendants in Mexico. DE 37, ¶ 8. Unfortunately, Plaintiff's counsel does not provide any explanation of the relationship between Plaintiff and Chicken of the Sea Frozen Food. Moreover, the Court has not been provided with any underlying documentation showing that

9

Mr. Perez was retained by Plaintiff for the purported purpose. The Court urges Plaintiff's counsel to supply this additional information should Plaintiff refile its motion.

Plaintiff's counsel also submitted a copy of a retention agreement apparently entered into between Chicken of the Sea Frozen Foods and FTI Consulting, a private investigation firm in Mexico as further evidence of costs incurred during the course of this litigation. *See generally* DE 37-7 at 5-11. The copy provided by counsel is not signed by either party to the agreement. Pursuant to the agreement, the client is required to pay FTI "USD $2,000 plus taxes" for the first phase of the work once FTI is instructed to proceed with the assignment. See *id.* at 7. Again, Plaintiff's counsel did not provide any insight into the relationship between it and Chicken of the Sea Frozen Foods, nor did counsel provide any underlying proof that Plaintiff paid the $2,000 required by the agreement. Once again, if Plaintiff subsequently re-files its motion, this information should be included.

Finally, Plaintiff's counsel provided the Court with an itemized bill issued by Civil Action Group dba APS International, Ltd. *See generally* DE 37-7, pp. 12-14. The bill references the instant action and lists a number of expenses incurred in connection with serving the individual Defendants with process in Mexico, including specific translation expenses. *Id.* According to the bill, a total of $2,870.40 in fees were incurred in April and May of 2013. Another $65 for a Federal Express charge was incurred in April 2015. *Id.* at 13. Plaintiff would be entitled to an award of damages in the sum of $2, 935.40 for these costs.

Plaintiff has requested a damages award which includes $36,000 in attorney's fees. *See* DE 32, ¶¶ 11-12; *see also* DE 37, ¶ 7. In doing so, counsel relies on the section of the Agreement stating that any "collection costs including reasonable attorney fees shall be secured by the security documents necessary to effectuate the objectives and protections" as set forth in

10

the Agreement. DE 32, ¶ 11. Counsel maintains that his fee arrangement with Plaintiff is a 20% contingent fee, equaling $69,842, but reduced for the purpose of the Motion to $36,000. *Id*. The Court therefore directed Plaintiff to provide copies of contemporaneous time/billing records and a copy of the engagement letter/fee arrangement entered into with his client. The Order at p. 2.

Plaintiff's counsel responded that he has been Plaintiff's general counsel for approximately 35 years. DE 37 at ¶ 7. He has not entered into a written agreement with Plaintiff and he does not keep track of the hours spent on Plaintiff's cases. *Id*. Counsel further explained that given the duration and nature of the instant action as well as the challenges counsel faced in locating and serving Defendants, he estimates that he has spent more than 200 hours working on this case. *Id*. According to counsel, the $36,000 requested therefore represents only a small fraction of the fees he has actually incurred litigating this case. *Id*.

"[C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983); *see LG Funding, LLC v. Florida Tilt, Inc.*, No. 15-631, 2015 WL 4390453, at *5 (E.D.N.Y. 2015) ("While a contingency award of 20% of the damages may well result in a reasonable fee . . . the Court declines to award a percentage award in the absence of contemporaneous time records."); *see also In re Terrorist Attacks on September 11, 2001*, No. 03-1570, 2015 WL 6666703, at *13 (S.D.N.Y. Oct. 28, 2015) (denying an award for attorney's fees when counsel, a contingency fee firm, failed to maintain any contemporaneous time records), report and recommendation adopted by, 2015 WL 925560 (S.D.N.Y. Dec. 18, 2015).

In the interest of equity, however, the Second Circuit has allowed for the recovery of fees by an attorney who failed to maintain contemporaneous records. *See D'Jamoos v. Griffith*, 340 Fed. Appx. 737, 742 (2d Cir. 2009) (application of the "ironclad" rule that failure to maintain

11

contemporaneous records bars recovery of fees "would be nonsensical where, as here, an attorney seeks to be compensated on a quantum meruit basis for services rendered under a contingent-fee agreement."). Some courts have "intermittently" adopted "roughly a 30% fee reduction rule" for an attorney's failure to keep contemporaneous time records of their services." *Monaghan v. SZS 33 Associates, L.P.*, 154 F.R.D. 78, 84 (S.D.N.Y. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 438 n. 13, 103 S. Ct. 1933, 1942 n. 13, 76 L.Ed.2d 40 (1983), superseded by statute on other grounds as stated in *Whitehead v. Colvin*, No. 15-5143, 2016 WL 1464469, at *2 n.1 (W.D. Wash. Apr. 14, 2016); *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10 etc.*, 749 F.2d 1000, 1008 (2d Cir.1984); *Orshan v. Macchiarola*, 629 F.Supp. 1014, 1019 (E.D.N.Y.1986); *Johnson v. Kay*, 742 F. Supp. 822, 836–37 (S.D.N.Y.1990); *Carrero v. New York City Housing Authority*, 685 F. Supp. 904, 908–09 (S.D.N.Y.1988), modified on other grounds, 890 F.2d 569 (2d Cir. 1989), superseded by statute on other grounds as stated in *Olszewski, v. Bloomberg L.P.*, No. 96-3393, 1999 WL 182596 (S.D.N.Y. 1999) (citing *Natale v. Mount Sinai Med. Ctr.*, No. 90-8144, 1993 WL 228877, at * 1 (S.D.N.Y. June 23, 1993)); *Martegni v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 378 (S.D.N.Y. 2010) (reducing the 28% contingency fee by 30% on the ground that the attorney failed to maintain contemporaneous time records, which frustrates the Court's ability to assess the reasonableness and fairness of the fee requested.); *Nu-Life Const. Corp. v. Bd. of Educ. of City of N.Y., Div. of Sch. Bldgs. of Bd. of Educ. of City of N.Y.*, 795 F. Supp. 602, 609 (E.D.N.Y. 1992), aff'd sub nom. *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994) (Attorney's fees were "reduced by a factor of 30% as result of, among other things, Nu–Life's submission of vague and non-contemporaneous time records.").

Given the status of this motion, the Court respectfully recommends that the issue of attorney's fees for Plaintiff's counsel be deferred until the other outstanding matters are resolved. The Court points out that it would be helpful, upon the future re-submission of this motion, that counsel provide copies of any billing he has done to his client for this matter if he has done so.

For the reasons discussed above, the Court respectfully recommends to Judge Hurley that Plaintiff's Motion for Default Judgment be DENIED at this time, without prejudice, and with the right to renew, once Plaintiff complies with the directives set forth in this Report and Recommendation.

**IV.    OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF. Any objections being filed by a pro se litigant are to be sent by first-class mail to the Clerk of the Court.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), cert. denied, 522 U.S. 883 (1997); *Savoie v. Merchants B*ank, 84 F.3d 52, 60 (2d Cir. 1996).

Attorney Green is directed to serve a copy of this Order on the Defendants forthwith and to file proof of such service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
February 10, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge